Judge Carr,
delivered his opinion:
In 1816, James Caldwell bought of the plaintiff Bow-yer, (his brother-in-law,) his seventh part of the White Sulphur Springs; for which he agreed to give him $7000, payable in instalments, the last to become due in 1824. A mortgage to secure the purchase money was given by the vendee; but, as it is not in the record, we do not know what property it conveyed. Things remained in this situation till April, 1820; when Caldwell (being deeply indebted, and suits depending against him to a great amount, on which it was known there would be judgments in the following May,) executed a deed of trust to John B. Caldwell, for the security of his debt to Bowyer, conveying a tract, of land in Ohio, and all his personal property, down to the most trifling article;—the whole of the negroes and *26 -furniture of every kind, which enabled him to carry on the establishment of the White Sulphur Springs. The creditors obtained judgments, and had executions levied on a part of the property conveyed to the trustee. Upon this, p^e trustee and cestui que trust, filed their bill of injunction to stop the sale, claiming the property as a security for their debt. The defendants answered, charging the deed with fraudo Evidence was taken, and on motion, the injunction was dissolved; from which order this appeal comes up.
It was contended in the argument, for the appellee, that a Court of Chancery had no jurisdiction, because the law gave a complete remedy. I am entirely of this opinion; and believing it a question of great importance, and extensive influence on the interests of the community, I shall examine it with some minuteness.
Courts of Equity exercise jurisdiction: 1. Over those cases where the principles of law, governing the ordinary Courts, give a right, but from accident, fraud or defect in their mode of proceeding, they either afford no remedy, or an incpmplete one. To this class, belong cases of relief, where instruments have been lost, suppressed, or desr troyed; eases of enlarging the remedies of the ordinary Courts, or of affording remedies where none exist, or those previously existing are lost-or incomplete; cases of specific performance, of partition, dower, account, &c. 2. Where by fraud, accident, or otherwise, a party has an advantage in proceeding in a Court of Law, which would render such Court an instrument of injustice, Courts of Equity will restrain the party from using such advantage. On this principle, equity interferes with respect to fraudulent deeds, or deeds, by fraud, accident or mistake, framed contrary to the intention of the parties. To this class belong also, cases of accident, oppression, improper contracts, as marriage brokage bonds, &c. 3. In those cases where, according to the principles of natural and universal justice, there ’are rights, but the law has provided no remedy, Courts of *27 Equity provide a remedy. Of this kind are matters of trust and confidence. 4. Where there are impediments to the fair decision of a question in other Courts, equity exercises an ancillary jurisdiction, to remove those impediments. 5. Where pending a litigation, the property in dispute is in danger of being lost, and the powers of the Court, in which the controversy depends, are insufficient for the purpose, equity will interpose to preserve it. 6. Equity exercises a jurisdiction to prevent the assertion of a doubtful right, in a manner productive of irreparable injury; such arc cases of waste, the invasion of copy-rights and patents. 7. Where two or more claim the same thing by different titles, and another is in danger of injury from ignorance of the real title, equity will compel the claimants to interplead. 8. Equity exercises a jurisdiction to put an end to the oppression of repeated litigations, after satisfactory determinations of the question, upon the principle interest reipublicm ut sit finis litium. This enumeration is carefully abstracted from the hooks, and especially from that admirable treatise of Lord Redesdale’s on pleading, which is so well established as to have the authority of a text book. The heads of equity here slated, with a few others not at all relating to the case before us, will be found to comprehend nearly all the subjects of equitable jurisdiction. They all purport to come in aid of, and supply some defects in, the law. Even in those cases where equity exercises concurrent jurisdiction, as Dower, Partition, Account, it was assumed to avoid the difficulties raised by the numerous and nice technicalities of the common law. There is no more frequent or better settled ground of demurrer to hills, than that there is a complete remedy at law. See 3 Atk. 740; 3 Bro. Parl. Cas. 525. Mitford, 111, says, ££ In general, where a plaintiff can have as effectual and complete remedy in a Court of Law, as in a Court of Equity, and that remedy is clear and certain, a demurrer, which is, in truth, a demurrer to the jurisdiction of the Court, will lie.” Many cases in the modern Reporters *28 might be referred to, but the doctrine is too well settled to reqUjre it.
Under that head, which authorises the interference of equity where the legal remedy is incomplete, a bill was sustained for the recovery of an ancient silver altar, claimed by the plaintiff as treasure trove within his manor; for, though he might have recovered at law, the value in an action of trover, or the thing itself, if it could be found in detinue; yet, as the defendant might deface it, and thereby depreciate the value, it was decided that the defect of the law, in that particular, ought to be supplied in equity. Duke of Somerset v. Cookson, 3 P. Wms. 390. So, where an estate was held by a horn, and a bill was brought by the owner of the estate to have the horn delivered to him, demurrer was overruled. Pusy v. Pusy, 1 Vern. 273. A few other cases occur, on the same principle, where equity interferes to give the owner, in specie, some curious or ancient piece of furniture, or other property, which, from peculiar circumstances, bears a fanciful value, the pretium affectionis; and for which damages given by a jury, would be no compensation. These, however, form no exception to the rule, that equity will not interfere where the legal remedy is complete; for, they are founded on the express and sole ground, that the remedy is incomplete.
Now I ask, to which of the enumerated subjects of equitable jurisdiction, can the case before us be referred ? Is equity invoked, because there is no legal remedy, or the remedy is incomplete, or because the law Courts are made instruments of injustice, or to remove impediments to a fair decision of the question, or to provide for the safety of the property pending litigation, or to restrain the assertion of a doubtful right, in a manner productive of irreparable injury ? We look in vain for any such allegations in the bill. It is simply, that the plaintiff’s security may be diminis'hed by the sale of the property. Now, this allegation is so far from trqe, that it seems to me, that the very best thing Bowyer could have done, would have been to suffer the *29 creditors to idemnify and sell the property, and to have taken his legal remedy against them, if indeed his real object in taking the deed, was to secure his debt, and his real wish, after the seizure, was to settle the controversy in the shortest way, and with least risque to himself. By coming into equity, the plaintiff has had to give bond and security, thus rendering himself liable for the whole of the creditors’ debts, if he fails; and has been five years in litigation, leaving the property all the while in the hands of the debtor, subject to loss by death, (for great part of it is perishable,) and to the still greater dangers of removal, waste, and dissipation in various ways, by an insolvent man. If, instead of filing his bill, ho had given notice of his claim, and suffered the creditors to indemnify and sell; the property would have been turned into money at once; thus, saving all chance of loss from death, waste, or oloignment; and instead of the faith and responsibility of the debtor, the plaintiff would have had (supposing his deed bona fide) a certainty of recovering the full value of the property sold. He might have taken his choice of remedies; a suit for the specific thing; for damages; or on the indemnifying bond; a bond guaranteed by the sheriff and all his sureties. And, in addition to this certainty, he would have had the speedy remedy of a legal trial, instead of the tedious process of a suit in equity. Thus, supposing the plaiutiff a fair incumbrancer, he would have been benefited rather than injured, by a proceeding at law.
But look now at the other side. Judgment-creditors are a highly favoured class; their debts are of the first digninity; they constitute a lien on the estate of the debtor; and the statute of frauds has declared every instrument made with a view to hinder or defraud them of their just and lawful actions, debts, &c. utterly void as against them. The officer levies the execution of the creditor, on property found in the possession of the debtor, and which he is using as his own. A third person claims it under a deed of trust. The sheriff demands indemnity. The creditor *30 believes that this deed has been made to hinder and defraud To prevent this hindrance, he determines to itidemnify and sell. The incumbrancer sues on the bond. This prompt and simple proceeding puts in issue, at once, the fairness of the deed of trust, and the trial is by a jury of the country. If fair, the incumbrancer gets his money; if fraudulent, the execution of the creditor is satisfied. One single suit decides the business. But, if the sale is in-joined, the property returns to the debtor; an injunction bond is given; years wear away in the slow march of Chancery causes; the matter is tried by a Court instead of a Jury, upon depositions, instead of viva voce evidence; and if at last the creditor succeeds, he finds the property dissipated, and has a third suit to bring on the injunction bond. Observe the mischiefs of this proceeding. 1. You violate the rule, which forbids a resort to equity, where the remedy is complete at law: 2. You run counter to the bill of rights, which declares, that “ in controversies re. specting property, and in suits between man and man, the ancient trial by jury is preferable to any other, and ought to be held sacred:” and 3. You violate directly the spirit and policy of the statute of frauds; for, wherever a deed is made to hinder a creditor, you give it the full effect, by forcing him out of his direct road, into the devious path of equity. The inevitable effect of this, is, to hinder, delay, and often to defeat altogether, his recovery. Suppose a deed, the most grossly fraudulent, is made. The creditor, if you do not stop him, levies on the property and sells; and there is an end of if. For, the parties to the fraud, finding their pui’pose thwarted, and the property gone, do not venture to sue on the bond of indemnity. But, suffer the case to go into equity; no matter how gross the fraud, it does not appear on the face of the deed or bill. The defendant must answer; evidence must be taken; if the injunction be dissolved on motion, it is such an order as may be appealed from; and as time is the very thing the debtor wants, the race seldom ends, till we pass upon it here.
*31 The ease before us forcibly exemplifies all this. It is most apparent, that the main purpose of the deed, was to hinder and defraud the creditors. The whole train of circumslances, attendant on the transaction, proclaim this; and it is proved, that Caldwell declared it to be his pur. pose. Yet, palpable as the contrivance was, it has answered the very purpose, for which it was resorted to. Five years have the creditors been kept at bay; all which time, the debtor has had the freo use of the property, and ample opportunity of putting it out of the reach of the creditors. This interference of equity, has grown to be a crying evil among us; and ought to be corrected with a firm and steady hand. It is perfectly understood in the country, and has become the common resort for fraudulently covering the property of debtors.
It seems to be supposed, that there are decisions of this Court, which authorise injunctions in cases like the one before us; and Wilson & Trent v. Butler, &c. 3 Munf. 559; Scott et ux. v. Halliday, 5 Munf. 103; and Sampson v. Bryce, 5 Munf. 175, are referred to. Let it be observed, that in all these cases, the plaintiff in equity claimed the property, not as a security for money, but as belonging of right to himself; and further, that this property was slaves. The Court, in those cases, place the subject on the ground of the specific execution of contracts, where every application is to the sound discretion of the Court, and they never interfere but where the legal remedy is incomplete. It must he obvious to every one, that various causes may exist, to give slaves a value in the eye of the master, which no estimated damages could reach. The slave may have been raised by him, and may possess moral qualities, which, to his master, render him invaluable. He may have saved the life of the master, or some one of the family, and thus have gained with them a value above money and above price. When any case of this kind is addressed to a Court of Equity, it will interfere (as it did in the cases before cited, of the silver altar piece. *32 and the ancient horn,) upon the ground, that there is no complete remedy at law; and thus far only, do I understand the cases in this Court to have gone; and this was the explanation given to them, in the case of Allen v. Freeland, (post 170,) lately decided. As I understand it, they authorise the interference of equity in no case, where the plaintiff claims as an incumbrancer merely; and when he claims as owner, only in those cases, where from the peculiar nature of the property and circumstances of the case, the remedy at law is incomplete. This idea is strengthened by the information of those who were members of the Court, when these cases were decided. Thus interpreted, they furnish no authority for violating the well settled and wholesome rule, that where the law gives a complete remedy, equity will notinterfere. While we hold firmly to this rule, the ancient land marksof the law cannot be removed; and equity, restrained within her proper sphere, the auxiliary, the hand-maid of the law, will be felt and acknowledged by all, as a blessing. No man estimates more highly than I do,, the important, the salutary influence of the powers of equity, legitimately exercised. But, it is an encroaching jurisdiction, and should be strictly watched. With Judge Roane, in Long v. Colston, I may say, “this jurisdiction must have limits, and ought not to ingulph and destroy the salutary jurisdiction of the common law;” and I add with him, “I wish not to yield up every thing to that encroaching jurisdiction, which knows not the inestimable trial by jury, and is blind to the incalculable superiority of viva voce testimony.”
On these grounds, I am clear that the order of the Chancellor be affirmed.
The other Judges concurred, and the judgment was affirmed. *
Note.—The foregoing cases are placed out of their chronological order.

 Judge Coalter, absent.